```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

BUTCH THREADGILL, ET AL.                      CIVIL ACTION

VERSUS                                        NO: 02-1122

CITY OF NEW ORLEANS, ET AL.                   SECTION: R(1)

## ORDER AND REASONS

Before the Court is the City of New Orleans' Rule 12(c) motion to dismiss the First Amended Complaint of plaintiffs Butch Threadgill and General Contracting and Consulting Services. In the alternative, the City moves for summary judgment pursuant to Rule 56. For the following reasons, the Court grants the City's motion for summary judgment.

## I. BACKGROUND

On January 23, 2000, a severe hail storm caused significant roof damage to Orleans Parish schools. The City of New Orleans contracted with Mitchell Crusto, d/b/a Angelic Asset Management, Inc., to provide damage assessments for hail damage to City buildings. Under the agreement, Crusto was to survey City property for damage and process loss/damage claims with CNA Insurance Company, the City's insurer.[1]  Crusto entered into a Marketing Agreement with Butch Threadgill and Tom Weems through their business, General Contracting and Consulting Services, LLC

---

[1] R. Doc. 83-1 at 2.

("GCCS"), to prepare bids and estimates for loss and damage to the City's buildings.[2] Plaintiffs were to receive no compensation for their services under the Agreement. Rather, the *quid pro quo* was Crusto's commitment to use the plaintiffs exclusively to perform the repair work, limited by the acknowledgment that Crusto did not control the City's employment of contractors.[3] Plaintiffs allege that Crusto "was to use his influence to assign the repair work" to them[4] and that they expected to earn a 30-35% profit on the repairs.[5] For their part, plaintiffs were obligated under the Agreement to pay Crusto a "sales commission" of 10% of the amount plaintiffs received from CNA to perform the repair work.[6]

Plaintiffs performed dozens of damage assessments of City properties, as well as of properties owned by the Orleans Parish School Board ("OPSB") under a similar Marketing Agreement, incurring total costs of $154,609.25.[7] After learning that he was required to comply with Louisiana's Public Bid Law in assigning the repair work, Crusto terminated both Marketing

---

[2] *Id.* at 3-4.

[3] *Id.* at 4.

[4] R. Doc. 214-2 at 2.

[5] R. Doc. 166 at 3.

[6] R. Doc. 83-1 at 4.

[7] *Id.* at 4-5.

Agreements by letter on December 13, 2001.[8]  Plaintiffs allege that they demanded return of the damage and repair estimates, but Crusto refused.[9]  Plaintiffs received no repair work for any of the City properties.[10]

In 2002, plaintiffs sued Crusto and the OPSB,[11] and later sued Crusto, the City, and the City's insurers.[12]  The two suits were consolidated.[13]  Plaintiffs alleged that they submitted repair estimates and bid proposals to Crusto that were copyrighted to Tom Weems, all rights reserved.[14] Plaintiffs also stated that they negotiated damage estimates with CNA Insurance Company.[15]  They claimed that Crusto did not pay them for the work done and that he used the estimates and photographs in promotional material sent to other cities as examples of his own work.[16]  Finally, plaintiffs alleged that Crusto distributed the

---

[8] *Id.* at 6.

[9] R. Doc. 166 at 4.

[10] R. Doc. 83-1 at 7.

[11] R. Doc. 1.

[12] No. 02-1460, R. Doc. 1.

[13] R. Doc. 31.

[14] No. 02-1460, R. Doc. 1 at 4.

[15] *Id.*

[16] *Id.*

bids to the City as his own for approval and payment.[17]  As to the City, the plaintiffs' only allegation was that the City should have known that the work being used by Crusto was copyrighted material belonging to plaintiffs.[18]

Plaintiffs asserted claims under federal copyright law, the Louisiana Unfair Trade Practices Act ("LUTPA"), and state tort and contract law.  They brought their tort claim under Louisiana Civil Code Article 2315, Louisiana's general negligence provision, alleging conversion and misappropriation of their privileged and copyrighted material.[19] Plaintiffs sought treble damages and attorneys fees under LUTPA, actual damages plus loss of profits or statutory damages under the federal copyright laws, and damages for loss of business, loss of profits, loss of income, exemplary damages, attorneys' fees, and interest under the state tort and property laws.[20]

In 2003, plaintiffs and Crusto entered into an arbitration, and the Court stayed the litigation.  The arbitrator found that by committing to use the plaintiffs exclusively to perform the repair work, Crusto had implied in the Marketing Agreement that

---

[17] *Id.*

[18] *Id.* at 6-7.

[19] *Id.* at 6.

[20] *Id.* at 7-8.

he had the ability to influence the City's assignment of work.[21] He determined that the plaintiffs had entered into the Marketing Agreement with the mistaken belief that Crusto had this ability, when he in fact had no such influence and was not even assigned by the City to assist in obtaining roof repairs until after he had terminated the Marketing Agreement.[22] The arbitrator determined that the plaintiffs' mistake was unilateral, because Crusto knew or should have known that the repair work was outside the scope his agreement with the City. The arbitrator concluded that the plaintiffs' consent to the Marketing Agreement was vitiated by unilateral error regarding the principal cause of the contract.[23] The arbitrator also found that the plaintiffs' Marketing Agreement pertaining to the OPSB properties was vitiated by bilateral error. The arbitrator awarded the plaintiffs their out-of-pocket expenses in preparing the City and OPSB bids. Notably, the arbitrator commented that additional damages may be awarded in certain cases of rescission due to error, but the plaintiffs had presented no evidence of damages, "an essential claim element."[24] In dismissing plaintiffs' copyright claim, the arbitrator again commented on plaintiffs'

---

[21] R. Doc. 83-1 at 7.

[22] *Id.* at 8.

[23] *Id.*

[24] *Id.* at 9.

failure to present evidence of actual damages or profits of the infringer attributable to the alleged infringement.[25]

The Court entered a judgment confirming the arbitration award on June 17, 2009.[26] Plaintiffs then sought to lift the stay to allow the case to proceed among the remaining parties, which the Court granted.[27] As the parties prepared for trial, they discovered that the City had never been notified that the stay had been lifted and a trial set. Once served, the City moved to dismiss plaintiffs' claims in the original complaint. The Court granted that motion but gave plaintiffs leave to amend the complaint.[28]

On April 3, 2013, Threadgill and GCCS filed a Consolidated Amended Complaint that abandoned their copyright, LUTPA, conversion, and misappropriation claims against the City and OPSB and asserted only a claim of unjust enrichment.[29] The plaintiffs argue that the City and OPSB knew that the plaintiffs prepared the damage and repair estimates and were negotiating with the

---

[25] *Id.*

[26] R. Doc. No. 84.

[27] R. Doc. No. 106.

[28] R. Doc. No. 156.

[29] R. Doc. No. 166. Weems failed to file an amended complaint and is no longer a party to this litigation.

insurers.[30] They allege that the OPSB and the City obtained substantially higher insurance payments than were originally quoted as a direct result of the plaintiffs' damage estimates, yet they still were never paid.[31] On August 19, 2013, the City filed this motion seeking dismissal of, or in the alternative, summary judgment against the plaintiffs' unjust enrichment claim.[32]

**II. STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court must draw all reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or

---

[30] *Id.* at 4-5.

[31] *Id.* at 5.

[32] R. Doc. 200.

7

conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial.

*Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

Louisiana Civil Code article 2298 is Louisiana's unjust enrichment statute. It provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code art. 2298. Louisiana courts interpret this provision to require a five-part showing in order to recover. To succeed on an unjust enrichment claim:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and the resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, *i.e.*, the action is subsidiary or corrective in nature.

*Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 346 (5th Cir. 2009)(quoting *Minyard v. Curtis Prods., Inc.*, 205 So.2d 422, 432

9

(La. 1968)).

Here, plaintiffs' claim for unjust enrichment fails because (1) there was no impoverishment, (2) there is justification for any enrichment the City may have experienced and (3) the plaintiffs had other remedies at law available to them.

A person is impoverished when his patrimonial assets diminish or his liabilities increase. La. Civ. Code Ann. art. 2298 revision comments. Plaintiffs acknowledge that the arbitrator awarded them compensation for the expenses they incurred in preparing the estimates.[33] However, they now demand a percentage of the increase in the City's insurance proceeds over CNA's original estimate. Plaintiffs contend that they "did not assemble a team of professionals from Texas and other parts of the country to spend nine-months [sic] mobilized in New Orleans intensively inspecting and estimating the [City's] hail-damaged properties only to break even on their costs . . . ."[34]

If plaintiffs experienced an impoverishment beyond their out-of-pocket costs, it would be the result of lost profits from their failure to obtain the repair work, not from the City's refusal to pay them for the estimates. Neither Crusto nor the City ever promised the plaintiffs payment for the estimates, as a percentage of the insurance proceeds or otherwise. As for the

---

[33] R. Doc. 214 at 20.

[34] *Id.* at 20-21.

repair work, Crusto's contractual commitment to assign the work exclusively to plaintiffs "was limited by the acknowledgment that Crusto did not control the City's employment of contractors."[35] Regardless of whether Crusto implied that he could influence the City to assign the work to the plaintiffs, the plaintiffs never had any guarantee that the City would select them for the repair work, and the City never had any obligation to do so. Any measure of impoverishment would therefore be purely speculative.[36]

Plaintiffs' claim also fails because there is justification

---

[35] R. Doc. 83-1 at 4. The contract stated that it was "expressly understood by the parties to this agreement that Angelic does not control which contractor the City will employ to perform the replacement work." R. Doc. 214-19 at 47.

[36] This Court has expressed its doubt as to the legality of the Marketing Agreement's 10% "sales commission" provision in a related case brought by the OPSB against the plaintiffs and Crusto. No. 03-1064, R. Doc. 118 at 12. An Investigative Auditor's Report released by the Office of the Legislative Auditor for the State of Louisiana concluded that Crusto violated state public bid law and OPSB policy by entering into a confidential "kickback" scheme with another contractor, Horizon Group. *Id.* at 3. The agreement between Crusto and the Horizon Group contained the same language as the Marketing Agreement between Crusto and the plaintiffs in this case, except as to the percentage of profits Crusto would receive in exchange for awarding the repair work. *Id.* at 12. Although the legality of the Marketing Agreement is not at issue in this litigation, the Court notes that a party to a contract that has been nullified for illegality is precluded from recovering lost profits, even in the absence of bad faith. *See Trade-Winds Envtl. Restoration, Inc. v. Stewart*, CIV.A. 06-3299, 2008 WL 3551705 (E.D. La. Aug. 11, 2008) (quoting Boxwell v. Dep't of Highways, 14 So.2d 627, 632 (La. 1943)).

for any enrichment the City may have experienced by using the plaintiffs' estimates.  An enrichment is justified "if it is the result of, or finds its explanation in, the term of a valid juridical act between the impoverishee and the enrichee *or between a third party and the enrichee*."  *City of New Orleans v. BellSouth Telecomm., Inc.*, 690 F.3d 312, 326 (5th Cir. 2012) (emphasis added) (quoting *SMP Sales Mgmt., Inc., v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992) (quoting *Carter v. Flanagan*, 455 So.2d 689, 692 (La. Ct. App. 1984))).  Assuming without deciding that the plaintiffs' adjusting work influenced CNA's decision to increase its payment to the City, the enrichment was the direct result of a valid contract between Crusto and the City, under which Crusto would perform damage assessments and process claims with the City's insurer.  Crusto may have falsely implied that he could influence the City to assign the repair work to the plaintiffs if they would provide him with the estimates he needed, but that arrangement does not affect the validity of the underlying agreement between Crusto and the City.  Plaintiffs therefore cannot show that the enrichment was without justification, an essential element of their claim.

Finally, plaintiffs' claim fails because there were other legal remedies available to them.  The remedy of unjust enrichment "is subsidiary and shall not be available if the law

provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. For this reason, "unjust enrichment is a remedy of 'last resort' and is available only to fill a gap in the law. See *Port of S. Louisiana v. Tri-Parish Indus., Inc.*, 927 F. Supp. 2d 332, 341 (E.D. La. 2013) (citing *Hall v. James*, 986 So.2d 817, 820 (La. Ct. App. 2008).

Here, plaintiffs initially sought damages-including lost profits-against Crusto on a number of theories, including copyright infringement, breach of contract, conversion, misappropriation, and violations of the Louisiana Unfair Trade Practices Act. For whatever reason, the plaintiffs failed to produce evidence in the arbitration of the damages they claim to have suffered. Plaintiffs now claim that they have no available remedy at law because (A) the arbitrator found that plaintiffs' consent to the Marketing Agreement was vitiated by unilateral error and thus no contract ever existed between Crusto and the plaintiffs on which they could recover, and (B) whether or not the plaintiffs had a remedy against Crusto, they have no other remedy against the City.

The first argument fails because even if the plaintiffs had no remedy in contract for lost profits, they potentially could have recovered in tort, copyright, or under LUTPA had they provided the arbitrator with evidence of their damages. To recover for the tort of conversion, for example, plaintiffs

13

needed to show only that Crusto committed a wrongful act of dominion over their property, in denial of or inconsistent with their rights in the property. *See Aymond v. State, Dept. of Revenue & Taxation*, 672 So.2d 273, 275 (La. Ct. App. 1996). Similarly, LUPTA prohibits "any unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie Servs. v. Shell Deepwater Prod.*, 35 So.3d 1053, 1059 (La. 2010) (quoting La. Rev. Stat. § 51:1409(A)). The statute permits "any person who suffers any ascertainable loss" to recover in the case of "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct . . . ." *Id.* at 1060. The allegations in plaintiffs' original complaint plausibly stated a claim for relief against Crusto under these theories. Whether plaintiffs ultimately would have recovered after a full examination of the facts is immaterial, for "it is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine [sic] whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 2008) (emphasis in original).

That plaintiffs either failed to present evidence of their other claims, or the claims were rejected by the arbitrator,does not matter; all that matters is that they existed. *See Walters v. MedSouth Record Mgmt., LLC.*, 38 So.3d 245, 246 (La. 2010) (per

14

curiam) ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment.") (citation omitted); *Gallant Invs., Ltd. v. Illinois Cent. R.R. Co.*, 7 So.3d 12, 18 (La. Ct. App. 2009) ("[W]e conclude that any equitable action for unjust enrichment is precluded by the availability of the unambiguously-pleaded delictual action . . . .").[37]

Plaintiffs second argument also fails. The inquiry is whether the plaintiff had another potential remedy available; against whom that remedy existed is immaterial. In *II Fire Records, L.L.C. v. Clouden*, 951 So. 2d 1272 (La. Ct. App. 2007), the plaintiff, a recording company, sued a competing company for unjust enrichment after Derren Clouden, an artist with whom the plaintiff held an exclusive recording contract, recorded a number of albums and movies with the defendant. Louisiana's Fourth Circuit held:

> In the instant case, it is clear that the fifth requirement for proving unjust enrichment cannot be met, because II Fire had a remedy against Mr. Clouden. In fact, II Fire has a final judgment against Mr. Clouden. We need not determine whether Forefront and Inner City were unjustly enriched at the expense of II Fire, because II Fire's remedy was against Mr. Clouden. It is clear that Mr. Clouden was the party who was contractually obligated to II Fire. Had he complied with the II Fire Contract, Forefront and Inner City would not even be involved in this lawsuit. If Mr. Clouden breached

---

[37] Moreover, the arbitrator indicated the plaintiffs might have been able to recover damages other than their out-of-pocket costs, but that their complete failure to provide evidence of damages precluded recovery.

> his contract with II Fire, then Mr. Clouden, not Forefront and Inner City, is the responsible party. He caused the situation that is the subject of the instant case to exist, and II Fire's remedy was against him.

*Id.* at 1280.  Here, plaintiffs likewise had a potential remedy, and ultimately a final judgment, against Crusto.  The Court need not determine whether the City was enriched at the expense of the plaintiffs, because their remedy was against Crusto.  Had Crusto not misled the plaintiffs into believing he would procure the repair work for them, and had he not continued to use the plaintiffs' estimates even after cancelling the Marketing Agreement, the plaintiffs and the City would not be involved in this litigation.  The City was never obligated to the plaintiffs in any way; nor is it now.  Like the plaintiff in *II Fire*, Threadgill and GCCS did not recover the profits they had hoped to obtain in their suit against the true party at fault.  *See Id.* at 1274 (noting that II Fire had recovered only $75,000 from Clouden when its estimated profit loss was between $200,000 and $500,000).  The Court emphasizes once again, however, that the ultimate success or failure of the alternative legal remedy is irrelevant.  Because the plaintiffs had a remedy against the true party at fault, their unjust enrichment claim against the City fails.

16

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the City's motion for summary judgment.

New Orleans, Louisiana, this ___7th___ day of October, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE