```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

BUTCH THREADGILL, ET AL.                        CIVIL ACTION

VERSUS                                          NO: 02-1122

ORLEANS PARISH SCHOOL BOARD, ET AL.             SECTION: R(1)
```

## ORDER AND REASONS

Before the Court is the Orleans Parish School Board's ("OPSB") unopposed Rule 12 (b)(6) motion to dismiss the original complaint of plaintiffs Butch Threadgill, Tom Weems, and General Contracting and Consulting Services, LLC.  Also before the Court is OPSB's Rule 56 motion for summary judgment of plaintiffs' First Amended Complaint.  For the following reasons, the Court grants OPSB's motion to dismiss the original complaint, as well as OPSB's motion for summary judgment.

## I. BACKGROUND

On January 23, 2000, a severe hail storm caused significant roof damage to Orleans Parish schools.  The OPSB contracted with Mitchell Crusto, d/b/a Angelic Asset Management, Inc., to provide damage assessments for hail damage to City buildings.  The agreement required that the assessments "be supported by at least one licensed professional roofer's estimate for proposed repair or replacement of the damage."[1]  The agreement also provided that

---

[1] R. Doc. 83-1 at 3.

Crusto would "assist in the selection of appropriate contractors to perform the work . . . ."[2]  OPSB "agree[d] to allow and accept in general recommendations as to contractors to make all repairs to said property."[3]  As compensation, Crusto would receive 5.5% of any proceeds OPSB obtained from its insurer.[4]

Crusto had no experience in the areas of insurance claim adjusting, construction estimating, or construction.[5]  Approximately one month after entering the agreement with OPSB, but three months before that agreement was memorialized, Crusto entered into a Marketing Agreement with Butch Threadgill and Tom Weems through their business, General Contracting and Consulting Services, LLC ("GCCS").[6]  Under the terms of the Agreement, the plaintiffs were to prepare estimates for damage to and repair of the OPSB properties.  Plaintiffs were to receive no compensation for their services under the Agreement.  Rather, the *quid pro quo* was the right to be assigned at least some work by Crusto in the future.[7]  The Agreement provided, however, that "Angelic expressly reserves the right to use other contractors and is not

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.* at 3-4.

[7] *Id.* at 4.

providing [plaintiffs] with an exclusive agreement."[8]  Plaintiffs allege that Crusto "was to use his influence to assign the repair work" to them[9] and that they expected to earn a 30-35% profit on the repairs.[10]  The Agreement obligated plaintiffs to pay Crusto a "sales commission" of 10% of the amount they received from CNA to perform the repair work.[11]

Plaintiffs performed dozens of damage assessments of OPSB properties, as well as of properties owned by the City of New Orleans under a similar Marketing Agreement, incurring total costs of $154,609.25.[12]  On August 2, 2001, after an inquiry to the Louisiana Attorney General, OPSB learned that it, and by extension Crusto, would have to comply with Louisiana's public bid laws in awarding the vast majority of the repair work.[13]  Two months later, the agreement between OPSB and Crusto was amended to require Crusto to comply with the public bid procedures.[14] Crusto terminated both Marketing Agreements with the plaintiffs

---

[8] R. Doc. 214-19 at 16.

[9] R. Doc. 213-2 at 2.

[10] R. Doc. 166 at 3.

[11] R. Doc. 83-1 at 4.

[12] *Id.* at 4-5.

[13] *Id.* at 5-6.

[14] *Id.* at 6.

3

by letter on December 13, 2001.[15] Plaintiffs allege that they demanded return of the damage and repair estimates but that Crusto refused.[16] Plaintiffs received only a "negligible amount" of OPSB repair work before Crusto terminated the Marketing Agreement.[17]

In 2002, plaintiffs sued Crusto and the OPSB[18] and later sued Crusto, the City, and the City's insurers.[19] The two suits were consolidated.[20] Plaintiffs alleged that they submitted repair estimates and bid proposals to Crusto that were copyrighted to Tom Weems, all rights reserved.[21] Plaintiffs also alleged that they negotiated damage estimates with OPSB's insurers.[22] They claimed that Crusto did not pay them for the work done and that he posted the bid estimates, proposals, and photographs on Angelic's web site as examples of Crusto's own work and bid preparation.[23] Finally, plaintiffs alleged that

---

[15] *Id.* at 6.

[16] R. Doc. 166 at 4.

[17] R. Doc. 83-1 at 7.

[18] R. Doc. 1.

[19] No. 02-1460, R. Doc. 1.

[20] R. Doc. 31.

[21] R. Doc. 1 at 3.

[22] *Id.*

[23] *Id.* at 3-4.

4

Crusto distributed the bids to the City as his own for approval and payment.[24] As to OPSB, the plaintiffs' only allegation was that it should have known that the work being used by Crusto was copyrighted material belonging to plaintiffs.[25]

Plaintiffs asserted claims under federal copyright law, the Louisiana Unfair Trade Practices Act ("LUTPA"), and state tort and contract law. Plaintiffs brought their tort claim under Louisiana Civil Code Article 2315, Louisiana's general negligence provision, alleging conversion and misappropriation of their privileged and copyrighted material.[26] Plaintiffs sought treble damages and attorneys fees under LUTPA, actual damages plus loss of profits or statutory damages under the federal copyright laws, and damages for loss of business, loss of profits, loss of income, exemplary damages, attorneys' fees, and interest under the state tort and property laws.[27]

In 2003, plaintiffs and Crusto entered into an arbitration, and the Court stayed the litigation. The arbitrator determined that both Crusto and the plaintiffs had entered into the OPSB Marketing Agreement with the mistaken belief that Crusto had the

---

[24] *Id.* at 4.

[25] *Id.* at 6.

[26] *Id.* at 5.

[27] *Id.* at 5-7.

right to assign work to the plaintiffs.[28] The arbitrator found that the parties' consent to the OPSB Marketing Agreement was vitiated by bilateral error regarding the principal cause of the contract.[29] He also determined that the Marketing Agreement for the City properties was vitiated due to the plaintiffs' unilateral error, because Crusto knew or should have known that he never had the right to assign the City's repair work.[30] The arbitrator awarded the plaintiffs their out-of-pocket expenses in preparing the City and OPSB bids. Notably, the arbitrator commented that additional damages may be awarded in certain cases of rescission due to error, but the plaintiffs had presented no evidence of damages, "an essential claim element. In dismissing plaintiffs' copyright claim, the arbitrator again commented on plaintiffs' failure to present evidence of actual damages or profits of the infringer attributable to the alleged infringement.[31]

The Court entered a judgment confirming the arbitration award on June 17, 2009.[32] Plaintiffs then sought to lift the stay to allow the case to proceed among the remaining parties,

---

[28] R. Doc. 83-1 at 8.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] R. Doc. No. 84.

which the Court granted.[33]  As the parties prepared for trial, they discovered that the City had never been notified that the stay had been lifted and trial set.  Once served, the City moved to dismiss plaintiffs' claims in the original complaint.  The Court granted that motion but gave plaintiffs leave to amend the complaint.[34]

On April 3, 2013, Threadgill and GCCS filed a Consolidated Amended Complaint against both the City and OPSB.  In the Amended Complaint, plaintiffs abandoned their copyright, LUTPA, conversion, and misappropriation claims against the City and OPSB and asserted only a claim of unjust enrichment.[35]  The plaintiffs argue that the City and OPSB knew that the plaintiffs prepared the damage and repair estimates and were negotiating with the insurers.[36]  They claim that the OPSB and the City obtained substantially higher insurance payments than were originally quoted as a direct result of the plaintiffs' damage estimates, yet they still were never paid.[37]  On August 19, 2013, OPSB filed this motion seeking summary judgment against the plaintiffs'

---

[33] R. Doc. No. 106.

[34] R. Doc. No. 156.

[35] R. Doc. No. 166.  Weems failed to file an amended complaint and is no longer a party to this litigation.

[36] *Id.* at 4-5.

[37] *Id.* at 5.

unjust enrichment claim.[38] In an abundance of caution, OPSB also filed a motion to dismiss the original complaint as to it, because it was not a party to the City's successful motion to dismiss the original complaint.

**II. STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must

---

[38] R. Doc. 200.

contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court must draw all reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

## III. DISCUSSION

Because OPSB was not a party to the City's motion to dismiss the plaintiffs' original complaint, OPSB now moves to have those claims dismissed against it as well. The plaintiffs do not oppose the motion. The deficiencies that prompted this Court to grant the City's motion to dismiss the original complaint applied equally to the claims against OPSB, as they were identical in nature. Plaintiffs' First Amended Complaint, in which it abandoned all but the unjust enrichment claim it now brings, named both OPSB and the City as defendants. Therefore, for the reasons articulated in the Court's order granting the City's motion to dismiss,[39] which the Court incorporates here by reference, the Court dismisses the claims against OPSB as well. With only the unjust enrichment claim remaining, the Court now turns to OPSB's motion for summary judgment on that claim.

Louisiana Civil Code article 2298 is Louisiana's unjust enrichment statute. It provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude

---

[39] R. Doc. 156.

> cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. Code art. 2298.  Louisiana courts have interpreted the provision to require a five-part showing in order to recover. To succeed on an unjust enrichment claim:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and the resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, *i.e.*, the action is subsidiary or corrective in nature.

*Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 346 (5th Cir. 2009)(quoting *Minyard v. Curtis Prods., Inc.*, 205 So.2d 422, 432 (La. 1968)).

Here, plaintiffs' claim for unjust enrichment fails because (1) there was no impoverishment, and (2) the plaintiffs had other remedies at law available to them.

A person is impoverished when his patrimonial assets diminish or his liabilities increase. La. Civ. Code Ann. art. 2298 revision comments.  Plaintiffs acknowledge that the arbitrator awarded them compensation for the expenses they incurred in preparing the estimates.[40]  However, they now demand a percentage of the increase in OPSB's insurance proceeds over

---

[40] R. Doc. 213 at 21.

its insurers original estimate.  Plaintiffs contend that they "did not assemble a team of professionals from Texas and other parts of the country to spend nine-months [sic] mobilized in New Orleans intensively inspecting and estimating the OPSB's hail-damaged properties only to break even on their costs . . . ."[41]

If plaintiffs experienced an impoverishment beyond their out-of-pocket costs, it would be the result of lost profits from their failure to obtain the repair work, not from OPSB's refusal to pay them for the estimates.  Neither Crusto nor OPSB ever promised the plaintiffs payment for the estimates, as a percentage of the insurance proceeds or otherwise.  As for the repair work, Crusto's agreement with OPSB initially (and unlawfully) stated that OPSB would accept Crusto's recommendations for contractors, giving the plaintiffs what the arbitrator characterized as a "reasonable expectation that the provision of 'free estimates' to Crusto would result in paying work."[42]  However, Crusto's contract with the plaintiffs explicitly stated that Crusto "expressly reserve[d] the right to use other contractors and [was] not providing [plaintiffs] with an exclusive agreement."[43]  As a result, the plaintiffs never had a guarantee that Crusto would select them over another

---

[41] *Id.*

[42] R. Doc. 83-1 at 7.

[43] R. Doc. 214-19 at 16.

contractor.  Any measure of impoverishment would therefore be purely speculative.[44]

Plaintiffs' claim also fails because there were other legal remedies available to them.  The remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."  La. Civ. Code art. 2298.  For this reason, "unjust enrichment is a remedy of 'last resort' and is available only to fill a gap in the law.  See *Port of S. Louisiana v. Tri-Parish Indus., Inc.*, 927 F. Supp. 2d 332, 341 (E.D. La. 2013) (citing *Hall v. James*, 986 So.2d 817, 820 (La. Ct. App. 2008).

---

[44] This Court has expressed its doubt as to the legality of the Marketing Agreement's 10% "sales commission" provision in a related case brought by the OPSB against the plaintiffs and Crusto.  No. 03-1064, R. Doc. 118 at 12. An Investigative Auditor's Report released by the Office of the Legislative Auditor for the State of Louisiana concluded that Crusto violated state public bid law and OPSB policy by entering into a confidential "kickback" scheme with another contractor, Horizon Group.  *Id.* at 3.  The agreement between Crusto and the Horizon Group contained the same language as the Marketing Agreements between Crusto and the plaintiffs in this case, except as to the percentage of profits Crusto would receive in exchange for awarding the repair work.  *Id.* at 12.  Although the legality of the Marketing Agreement is not at issue in this litigation, the Court notes that a party to a contract that has been nullified for illegality is precluded from recovering lost profits, even in the absence of bad faith.  *See Trade-Winds Envtl. Restoration, Inc. v. Stewart*, CIV.A. 06-3299, 2008 WL 3551705 (E.D. La. Aug. 11, 2008) (quoting Boxwell v. Dep't of Highways, 14 So.2d 627, 632 (La. 1943)).

14

Here, plaintiffs initially sought damages-including lost profits-against Crusto on a number of theories, including copyright infringement, breach of contract, conversion, misappropriation, and violations of the Louisiana Unfair Trade Practices Act. For whatever reason, the plaintiffs failed to produce evidence in the arbitration of the damages they claim to have suffered. Plaintiffs now claim that they have no available remedy at law because (A) the arbitrator found that plaintiffs' consent to the Marketing Agreement was vitiated by bilateral error and thus no contract ever existed between Crusto and the plaintiffs on which they could recover, and (B) whether or not the plaintiffs had a remedy against Crusto, they have no other remedy against OPSB.

The first argument fails because even if the plaintiffs had no remedy in contract for lost profits, they potentially could have recovered in tort, copyright, or under LUTPA had they provided the arbitrator with evidence of their damages. To recover for the tort of conversion, for example, plaintiffs needed to show only that Crusto committed a wrongful act of dominion over their property, in denial of or inconsistent with their rights in the property. *See Aymond v. State, Dept. of Revenue & Taxation*, 672 So.2d 273, 275 (La. Ct. App. 1996). Similarly, LUPTA prohibits "any unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie*

15

*Servs. v. Shell Deepwater Prod.*, 35 So.3d 1053, 1059 (La. 2010) (quoting La. Rev. Stat. § 51:1409(A)).  The statute permits "any person who suffers any ascertainable loss" to recover in the case of "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct . . . ." *Id.* at 1060.  Whether plaintiffs ultimately would have recovered after a full examination of the facts is immaterial, for "it is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine [sic] whether unjust enrichment can be applied."  *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 2008) (emphasis in original).

That plaintiffs either failed to present evidence of their other claims, or the claims were rejected by the arbitrator, does not matter; all that matters is that they existed.  *See Walters v. MedSouth Record Mgmt., LLC.,* 38 So.3d 245, 246 (La. 2010) (per curiam) ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment.") (citation omitted); *Gallant Invs., Ltd. v. Illinois Cent. R.R. Co.*, 7 So.3d 12, 18 (La. Ct. App. 2009) ("[W]e conclude that any equitable action for unjust enrichment is precluded by the

availability of the unambiguously-pleaded delictual action . . . .").[45]

Plaintiffs second argument also fails.  The inquiry is whether the plaintiff had another potential remedy available; against whom that remedy existed is immaterial.  In *II Fire Records, L.L.C. v. Clouden*, 951 So.2d 1272 (La. Ct. App. 2007), the plaintiff, a recording company, sued a competing company for unjust enrichment after Derren Clouden, an artist with whom the plaintiff held an exclusive recording contract, recorded a number of albums and movies with the defendant.  Louisiana's Fourth Circuit held:

> In the instant case, it is clear that the fifth requirement for proving unjust enrichment cannot be met, because II Fire had a remedy against Mr. Clouden. In fact, II Fire has a final judgment against Mr. Clouden. We need not determine whether Forefront and Inner City were unjustly enriched at the expense of II Fire, because II Fire's remedy was against Mr. Clouden. It is clear that Mr. Clouden was the party who was contractually obligated to II Fire. Had he complied with the II Fire Contract, Forefront and Inner City would not even be involved in this lawsuit. If Mr. Clouden breached his contract with II Fire, then Mr. Clouden, not Forefront and Inner City, is the responsible party. He caused the situation that is the subject of the instant case to exist, and II Fire's remedy was against him.

*Id.* at 1280.  Here, plaintiffs likewise had a potential remedy, and ultimately a final judgment, against Crusto.  The Court need

---

[45] Moreover, the arbitrator indicated the plaintiffs might have been able to recover damages other than their out-of-pocket costs, but that their complete failure to provide evidence of damages precluded recovery.

not determine whether OPSB was enriched at the expense of the plaintiffs, because their remedy was against Crusto. Had Crusto not misled the plaintiffs into believing he would procure the repair work for them, and had he not continued to use the plaintiffs' estimates even after cancelling the Marketing Agreement, the plaintiffs and OPSB would not be involved in this litigation. OPSB was never obligated to the plaintiffs in any way; nor is it now. Like the plaintiff in *II Fire*, Threadgill and GCCS did not recover the profits they had hoped to obtain in their suit against the true party at fault. *See id.* at 1274 (noting that II Fire had recovered only $75,000 from Clouden when its estimated profit loss was between $200,000 and $500,000). The Court emphasizes once again, however, that the ultimate success or failure of the alternative legal remedy is irrelevant. Because the plaintiffs had a remedy against the true party at fault, their unjust enrichment claim against OPSB fails.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS OPSB's motion to dismiss the claims against OPSB contained in the original complaint, and GRANTS OPSB's motion for summary judgment of the plaintiffs' unjust enrichment claim.

New Orleans, Louisiana, this ___7th___ day of October, 2013.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE